IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JARED LAMAR HURST, | ) ) ) ) ) ) ) ) ) ) ) ) |
| *Plaintiff*, |
| v. |
| RICHARD ADAMS, |
| *Defendant*. |

No. 4:24-cv-01666-JMD

**MEMORANDUM AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

A jury found Jared Lamar Hurst guilty of first-degree rape, first-degree kidnapping, and first-degree burglary. Hurst is now serving an 85-year sentence. He filed a petition for writ of habeas corpus, 28 U.S.C. § 2254, to collaterally attack his conviction. He asserts that he meets all requirements for relief under that statute. But the Court need not consider his statutory argument because Hurst presents no colorable theory of actual innocence. Courts generally are prohibited from granting habeas relief to a person who is factually guilty—regardless of whatever trial errors allegedly occurred (if any).

That is because satisfying the statutory requirements for habeas relief is never enough. Habeas is an "equitable" remedy that district courts can deny as a matter of "discretion." *Brown v. Davenport*, 596 U.S. 118, 132 (2022). "[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." *Id*. at 134 (citing § 2243). "Today, then, a federal court *must deny* relief to a state habeas petitioner who fails to satisfy either th[e] [Supreme] Court's equitable precedents or AEDPA." *Id*. at 134 (first emphasis added).

1

Factual guilt nearly always undermines a claim for equitable relief from incarceration.  That is true for three reasons.  First, "[f]oremost among" the "equitable and prudential considerations" a court must consider when assessing a habeas petition is "the States' powerful and legitimate interest in punishing the guilty."  *Id*. at 132.  Second, the "historical concept of court[s] of equity" has always required that a person "who comes into equity must come with clean hands."  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  A person factually guilty of the offense for which he seeks relief from incarceration does not come with clean hands.  He has not shown that he "acted fairly and without fraud or deceit as to the controversy in issue."  *Id*. at 814–15.  Third, courts historically lacked any power to grant relief to prisoners convicted by courts of competent jurisdiction, and the Supreme Court's recent doctrine is "aimed at returning the Great Writ closer to its historic office."  *Davenport*, 596 U.S. at 128, 132 (citation omitted).  In assessing a petitioner's request for habeas relief, courts are bound by the Supreme Court's "precedents governing the appropriate exercise of equitable discretion," *id*. at 134, and those precedents instruct lower courts almost never to award state habeas relief to an inmate who is factually guilty.

Hurst never asserts factual innocence.  And based on the record before the Court, he cannot make even a colorable claim of innocence.  Because courts almost never can exercise equitable discretion to release a person who is factually guilty, the Court need not assess the statutory elements of § 2254.  Hurst's petition is denied.

**Background**

J.S., a Washington University graduate student, "woke to find a man on top of her." The attacker raped her anally and vaginally.  When J.S. started to scream, the attacker threatened to shoot her if she did not keep quiet.  He stole her phone after the attack, forcing J.S. to email her mother, friends, and classmates to have them call 911 for her.

2

Police matched Hurst's DNA to samples from J.S.'s hospital examination. After his arrest, Hurst asserted that the sexual interaction was consensual. Despite contrary evidence establishing that J.S.'s apartment window was pushed open from outside and had its lock broken, Hurst suggested he and J.S. shared a long-running physical relationship. He alleged that they were together every Monday, Wednesday, and Friday from July until September. But Hurst was unable to present evidence of meeting J.S. before the night of her attack. As he admitted, records reflected he never called J.S., texted her, or contacted her through social media. Hurst further conceded that he never met J.S.'s roommate or any of her friends.

A jury convicted Hurst on all charges. The trial court sentenced him to consecutive sentences of 45 years for first-degree rape, 20 years for first-degree kidnapping, and 20 years for first-degree burglary. Hurst received an aggregate 85-year sentence. The Missouri Court of Appeals affirmed his conviction and sentence. The only claim Hurst made on direct appeal concerned the admission of rebuttal testimony from a rape trauma therapist who had treated J.S., but the court rejected his contention.

Hurst next pursued collateral relief. After an evidentiary hearing, the post-conviction review court rejected this motion. The Missouri Court of Appeals similarly rejected Hurst's arguments on appeal.

Hurst now brings his claims before this Court through a federal petition for writ of habeas corpus. He raises four claims: (1) "Jury Selection, and deliberations ('error in strikes' and 'forced deliberations')"; (2) "Victims Impact Statements (Letters were submitted to the Court. Not victims of family nor community)"; (3) "Evidence of the Case Burgarly [sic] 1st (None)"; and "Jury Instructions on Kidnapping (wrong Instructions)." These short statements form almost the entirety of his petition. The State concedes his petition appears timely.

3

**Analysis**

The Founders would have been flummoxed by the idea of a § 2254 petition, where a state prisoner challenges his conviction in federal district court. That kind of petition asks for something historically strange. Its effect is to ask a federal *trial* court to exercise appellate review over a state *supreme* court. And it asks a federal trial court to overturn a conviction for violating a state crime even though "the entire state judicial system and th[e] [Supreme] Court had seen nothing amiss." *Edwards v. Vannoy*, 593 U.S. 255, 287 (2021) (Gorsuch, J., joined by Thomas, J., concurring). This novelty was unheard of until the Supreme Court created it around the mid-twentieth century, and the Supreme Court and Congress have been limiting it ever since.

As part of those limits, both Congress and the Supreme Court have made clear that it is never enough for a habeas petitioner attacking a conviction to establish the elements of the habeas statute. Those statutory elements are necessary, but not sufficient. The petitioner must also establish, as a separate matter of equity, that the federal district court should exercise equitable discretion to release a convicted defendant from prison. That bar is extraordinarily high. Under the Supreme Court's recent precedents, federal district courts almost never can grant habeas relief to a person, like Hurst, who is factually guilty.

**I.**

For the first two hundred years of our country, the idea that a petitioner could run to a federal trial court to collaterally attack a state conviction was unthinkable. Although Congress early on granted federal courts the ability to hear habeas petitions, those petitions could be used to compel a custodian to bring an inmate to trial, not to reverse one that already occurred. *Davenport*, 596 U.S. at 128. "If the point of the writ was to ensure due process attended an individual's confinement, a trial was generally considered proof he had received just that." *Id*. Habeas "was simply not available at all to one convicted of crime by a court of

4

competent jurisdiction." *Edwards*, 593 U.S. at 277 (2021) (Thomas, J., concurring) (citation omitted). "Custody pursuant to a final judgment was *proof* that a defendant had received the process due to him." *Id.* at 284 (Gorsuch, J., concurring) (discussing *Bushell's Case*, 124 Eng. Rep. 1006, 1009–1010 (C. P. 1670)). As Chief Justice Marshall put it, the trial court's "judgment in *itself* [is] sufficient cause" for continuing detention. *Davenport*, 596 U.S. at 129 (quoting *Ex parte Watkins*, 3 Pet. 193, 202 (1830)). The major exception to this rule was that a "court could grant relief if the court of conviction lacked jurisdiction over the defendant or his offense." *Id.* But federal trial courts never had the power to correct nonjurisdictional errors. *Id.*

This changed around the mid-twentieth century. *Id.* at 130. In an "abrupt[ ]" departure, the Supreme Court's decision in *Brown v. Allen*, 344 U.S. 443 (1953), "upended centuries of settled precedent." *Edwards*, 593 U.S. at 278 (Thomas, J., concurring); *id.* at 288 (Gorsuch, J., concurring). Suddenly federal trial courts could engage in "[f]ull-blown constitutional error correction" of state supreme courts. *Davenport*, 593 U.S. at 130.

The Supreme Court and Congress have been putting *Brown* and similar cases back in the bottle ever since. Following "an exploding caseload of habeas petitions from state prisoners," the Supreme Court soon "devis[ed] new rules" to limit habeas relief and "return[ ] the Great Writ closer to its historic office." *Id.* at 131–32 (citation omitted). "[A]pparently finding [these limits] insufficient, Congress introduced its own reforms in AEDPA." *Id.* at 134. And the Supreme Court continued its own narrowing reforms after that. *See id.* These reforms bring habeas much closer to the constitutional enactment of 1789 than to the judicial expansion of 1953.

Throughout all this change, one thing remained constant. Federal district courts were never *required* to grant relief. From the beginning, habeas "statutes used permissive rather

5

than mandatory language." *Id.* at 128. Habeas has always been discretionary. *See, e.g., id.* at 127–134; *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022); *Edwards*, 593 U.S. at 289 (Gorsuch, J., concurring) ("The law thus invests federal courts with equitable discretion to decide whether to issue the writ or to provide a remedy.").[1] Even after habeas "slipped its traditional moorings" in the late twentieth century and moved in an unprecedented direction, federal courts still retained equitable discretion not to grant relief. *Davenport*, 596 U.S. at 131 n.2; *see also Fay v. Noia*, 372 U.S. at 438 ("Discretion is implicit in the statutory command that the judge . . . 'dispose of the matter as law and justice require.'") (quoting § 2243)). The same is true today. "That same structure lives on in contemporary statutes, which provide that federal courts 'may' grant habeas relief 'as law and justice require.'" *Davenport*, 596 U.S. at 128 (citing 28 U.S.C. §§ 2241, 2243).

---

[1] *See also Danforth v. Minnesota*, 552 U.S. 264, 278 (2008) (Federal courts must "adjust the scope of the writ in accordance with equitable and prudential considerations"); *Fay v. Noia*, 372 U.S. 391, 438 (1963) ("[W]e recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. . . . Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. . . . Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." (discussing waiver and procedural default)), overturned on other grounds by *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Edwards*, 593 U.S. at 289 n.3 (Gorsuch, J., concurring) (highlighting that the permissive language of §§ 2241 and 2243 is "nearly identical" to the text of the Declaratory Judgment Act, which the "Court reads" as vesting the district courts with "discretion" to award relief); *Withrow v. Williams*, 507 U.S. 680, 699–700 (1993) (O'Connor, J., concurring in part and dissenting in part) ("As the Court explains today, federal courts exercising their habeas powers may refuse to grant relief on certain claims because of prudential concerns such as equity and federalism.") (citation omitted); *id.* at 716 (Scalia, J., concurring in part and dissenting in part) ("Habeas jurisdiction is tempered by the restraints that accompany the exercise of equitable discretion. This is evident from the text of the federal habeas statute, which provides that writs of habeas corpus '*may* be granted'—not that they *shall* be granted—and enjoins the court to 'dispose of the matter as law *and justice* require.' That acknowledgment of discretion is merely the continuation of a long historic tradition.") (citation omitted); *Jennings v. Stephens*, 574 U.S. 271, 287 (2015) (Thomas, J., dissenting) ("This Court has frequently rested its habeas decisions on equitable principles.") (citation omitted); *Brecht v. Abrahamson*, 507 U.S. 619, 651 (1993) (O'Connor, J., dissenting) ("We long have recognized that the exercise of the federal courts' habeas powers is governed by equitable principles.").

6

## II.

Hurst thus must overcome not one, but two obstacles to obtain relief. First, he must navigate the "several limits on habeas relief" that Congress—through the Antiterrorism and Effective Death Penalty Act—and the Supreme Court have set to "ensure that federal habeas corpus retains its narrow role." *Shinn*, 596 U.S. at 377. Second, he must separately convince the Court to use equitable discretion to grant relief; he "must still persuade a federal habeas court that law and justice require" relief. *Id.* at 377 (citation omitted). "[A] federal court *must deny* relief to a state habeas petitioner who fails to satisfy either [test]." *Davenport*, 596 U.S. at 134 (first emphasis added).

This Court need not assess both sets of requirements. Federal courts can "exercise their sound discretion" to decide which obstacle "should be addressed first." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (discussing the two-part test for qualified immunity). If a prisoner cannot persuade the Court to exercise equitable discretion to grant habeas relief, the analysis need extend no further. *Cf. id.* at 234–37 (a "rigid order" of analysis risks "a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case"). To address the hypothetical statutory merits of an already doomed petition would be an "essentially academic exercise." *Id.* at 237; *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets . . . with a view toward the efficient and expedient resolution of cases.").

Assessing only the second obstacle—equitable discretion—Hurst's petition plainly fails. He makes no attempt to clear this obstacle. Nor could he clear it, because factual guilt is nearly always an insurmountable barrier to habeas relief and because nothing in the record remotely suggests factual innocence.

**A.**

The central equitable consideration for habeas is factual guilt. In assessing habeas petitions, a court must act "in accordance with equitable and prudential considerations. Foremost among those considerations is the States' powerful and legitimate interest in punishing the guilty." *Davenport*, 596 U.S. at 132 (internal citations omitted); *see also Kaufman v. United States*, 394 U.S. 217, 233–235 (1969) (Black, J., dissenting) (stating that a prisoner's "guilt or innocence" is a "vital consideration[] in determining whether collateral relief should be available" and that law and justice do not require "release of a person whose allegations clearly show that he was guilty of the crime of which he had been convicted"); Judge Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 157 (1970) ("[B]ecause of previous opportunity to litigate the point, release of a guilty man is not required in the interest of justice even though he might have escaped deserved punishment in the first instance with a brighter lawyer or a different judge.").

This central focus on factual guilt stems from the historical limits on habeas and the Supreme Court's more recent doctrine "aimed at returning the Great Writ closer to its historic office." *Davenport*, 596 U.S. at 132 (quoting *Edwards*, 593 U.S. at 290 (Gorsuch, J., concurring)). For hundreds of years, the "traditional understanding" of habeas, "extend[ing] from England to this country," was that courts lacked authority to provide habeas relief to individuals convicted by courts of competent jurisdiction. *Davenport*, 596 U.S. at 128; *see also Felker v. Turpin*, 518 U.S. 651, 663 (1996) ("Reviewing the English common law which informed American courts' understanding of the scope of the writ, we held that '[t]he judgment of the circuit court in a criminal case is of itself evidence of its own legality,' and that we could not 'usurp that power by the instrumentality of the writ . . . .'" (quoting *Ex parte Watkins*, 3 Pet. at 207)); Friendly, 38 U. Chi. L. Rev. at 171 ("[T]he assertion

8

that habeas as known at common law permitted going behind a conviction by a court of general jurisdiction is simply wrong."). In light of this historical limit, a factually guilty prisoner will almost never be entitled to habeas relief.

The central focus on guilt also flows directly from the doctrine of unclean hands. It is black-letter law, "rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith," that a person "who comes into equity must come with clean hands." *Precision Instrument*, 324 U.S. at 814; *see also Trump v. CASA, Inc.*, 606 U.S. 831, 832 (2025) (generally constraining federal district courts to "only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception") (citation omitted). While this maxim "does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument*, 324 U.S. at 814–15 (internal citation and quotation marks omitted). In petitions filed under § 2254, the "controversy in issue" is the inmate's continued detention, but a guilty inmate does not come to a court with clean hands on that issue. *Cf. Henderson v. United States*, 575 U.S. 622, 625 n.1 (2015) ("The [unclean hands] doctrine might apply, for example, if a felon requests the return or transfer of property used in furtherance of his offense."). Clean hands were required even during the heyday of looser habeas in the mid-twentieth century. *See Fay*, 372 U.S. at 849 ("Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.") (citation omitted).

There might be narrow, limited exceptions to the rule that a factually guilty person almost never can obtain habeas relief. Equity might favor a court exercising discretion in favor of a person who is guilty under a patently unconstitutional law. But even that person in truth would *not* be guilty because "an act of the legislature, repugnant to the constitution,

9

is void." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Others have suggested considerations apart from factual innocence that they think might justify equitable discretion. *E.g.*, Friendly, 38 U. Chi. L. Rev. at 151–53. The Court has no occasion to assess potential other circumstances where, as here, Hurst makes no clear attempt to argue at all that any equitable considerations apply. The Court notes only that any exception would have to comport with the Supreme Court's "precedents governing the appropriate exercise of equitable discretion," *Davenport*, 596 U.S. at 134, including the unclean-hands doctrine. These precedents sharply limit the potential for habeas relief.

### B.

What about the standard of proof for a petitioner who asserts actual innocence? Where a petitioner brings a second or successive habeas petition, the Supreme Court requires proof by a preponderance. The habeas petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citation omitted). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" or "excluded" evidence. *Id*. at 327–28. This is "a stronger showing than that needed to establish prejudice." *Id*. at 327. Others have suggested a lower standard. Judge Friendly, for example, suggested a "colorable" claim of innocence: "a fair probability" that "the trier of the facts would have entertained a reasonable doubt of his guilt." Friendly, 38 U. Chi. L. Rev. at 160 (cited in *Kuhlmann v. Wilson*, 477 U.S. 436, 454 n.17 (1986)).[2] Under either standard, the Court would consider "all the evidence, including that alleged to have been

---

[2] The Supreme Court has on occasion described that burden the same way as preponderance. *E.g.*, *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) ("*Kuhlmann* . . . required federal courts to entertain successive petitions when a petitioner supplements a constitutional claim with a 'colorable showing of factual innocence.'").

illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (quoting Friendly, 38 U. Chi. L. Rev. at 160).

The Court need not decide between these standards because Hurst fails even the more lenient standard; he has failed to assert any colorable claim of factual innocence. His threadbare petition alleges issues with jury selection, victim-impact statements, insufficient evidence (although only on his burglary charge, apparently not on his rape or kidnapping charges), and jury instructions (again on just one of the three charges for which he was convicted, kidnapping). The only claim here remotely related to actual innocence is his assertion of insufficient evidence. But based on the record available, there is no colorable doubt that Hurst is guilty. Unable to contest the sexual DNA evidence, Hurst asserted a long-running sexual relationship between him and the person he raped. But he had no evidence to back his assertion. He could provide no evidence they had ever met—no phone calls, no texts, no social media interactions. Nor had he apparently ever met her roommate or even one of her friends. And there was evidence that J.S.'s window had been forced open. In short, nothing at all connected Hurst and J.S. beyond evidence from the attack.

Absent any colorable claim of actual innocence, the equities overwhelmingly weigh against Hurst. He is not innocent, so the "[f]oremost" equitable consideration disfavors him. *Davenport*, 596 U.S. at 132 (citation omitted). This "legitimate interest in punishing the guilty," *id.*, is "shared by the State and the victims of crime alike," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). "Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Id.* Because the Supreme Court "has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas

11

corpus power," *Francis v. Henderson*, 425 U.S. 536, 539 (1976), Hurst's guilt decisively weighs against equitable relief.

Although no more need be said, other equitable factors also disfavor habeas relief here. A big one is federalism. "Granting habeas relief to a state prisoner 'intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.'" *Davenport*, 596 U.S. at 132 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Only with an assurance of real finality can the State execute its moral judgment in a case." *Calderon*, 523 U.S. at 556; *see Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (Federal courts exercising their equitable discretion "must take into consideration the State's strong interest in proceeding with its judgment . . . ."). Hurst asks this Court to act as an appellate tribunal over "the entire state judicial system" even though the Missouri Supreme Court and the Supreme Court already had an opportunity to review this case and saw "nothing amiss." *Edwards*, 593 U.S. at 287 (Gorsuch, J., concurring). This Court will not do so lightly and will not do so commonly.

### III.

One final point: Focusing judicial attention on the equitable requirements for habeas relief, rather than the statutory requirements, greatly enhances the ability of federal courts to resolve habeas petitions quickly. Although not implicated in this case, collateral litigation in capital cases often takes decades. *See, e.g.*, *Walls v. Florida*, No. 25-6357, 2025 WL 3674295 (U.S. Dec. 18, 2025) (denying in 2025 an application for stay of execution from a capital inmate convicted of a murder that occurred 38 years ago). This decades-long delay in capital cases "frustrate[s]" the "important interest in the timely enforcement of a sentence." *Bucklew v. Precythe*, 587 U.S. 119, 149 (2019). And in noncapital cases, the remote prospect of a guilty offender running free because of a technicality uncovered during habeas

12

proceedings "offers false hope to defendants." *Edwards*, 593 U.S. at 272.  On habeas review, technicalities are not enough.  Equities matter as well.

Courts can avoid both delay and false hope by focusing on the equitable requirements rather than the more technical statutory factors.  In almost every case, this focus will yield a quicker result because the analysis is more straightforward.  "[E]xperience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare."  *Schlup*, 513 U.S. at 324.

## Conclusion

All this doctrine makes clear that even if a petitioner satisfies the statutory elements for habeas relief, only in extraordinarily rare circumstances may a court exercise equitable discretion to grant relief.  This Court cannot do so for Hurst.  No equitable factor supports him.  The record provides no reason to doubt his guilt.  The Court thus need not consider Hurst's assertions about the statute.  Habeas is a two-part test.  Hurst must satisfy both parts.  He has not done so.  The Court, exercising its equitable discretion, finds that law and justice do not require the extraordinary remedy of habeas here.

**IT IS HEREBY ORDERED** that Hurst's petition for writ of habeas corpus, ECF 1, is **DENIED**.  A separate order of dismissal shall accompany this memorandum and order.

Dated this 23rd day of December, 2025

_____
JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE